UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wayzata Nissan, LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>Nissan North America, Inc.,<br><br>     *Defendant.* | Court File No. 13-cv-03651 (DSD/FLN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY AND TO EXTEND BRIEFING ON PLAINTIFF'S MOTION FOR REMAND** |

  Plaintiff Wayzata Nissan LLC ("Wayzata") has moved to remand on the ground that complete diversity of citizenship, and thus subject-matter jurisdiction, is lacking. Wayzata claims it is a citizen of California, where Defendant Nissan North America, Inc. ("Nissan") is incorporated, because nine days before commencing this action, one of its members transferred a 0.5% interest in Wayzata into a newly created irrevocable trust, with a California resident as trustee.  The transferring member, 39-year-old Randy Lammle ("Lammle"), declares that he did so for purposes of estate planning, and that the timing of this transfer right before the institution of this action was purely coincidental. Nissan, however, contends that the transfer was a sham designed to thwart this Court's jurisdiction, and it now seeks limited and expedited discovery in opposition to the motion to remand.  Specifically, Nissan seeks two depositions limited to the jurisdictional facts together with production of documents concerning the subject transfer, as discussed below.  Nissan anticipates that the necessary discovery could be completed within 45 days of this Court's Order allowing this Motion.

## JURISDICTIONAL FACTS AS ALLEGED BY WAYZATA

Nissan is a California corporation with its principal place of business in Tennessee. Complaint, ¶ 15. Wayzata is a limited liability company with its principal place of business in Minnesota. *Id*., ¶ 17. Immediately prior to November 18, 2013, Wayzata had three members, with the following ownership percentages:

| Member | Ownership Interest |
|---|---|
| Mark Saliterman (an individual residing in MN) | 66.57% |
| Marc Allen, Inc. (a MN S-corporation owned by Saliterman) | 13.43% |
| Randy Lammle (an individual residing in MN) | 20% |

*Id*.; Declaration of Randy W. Lammle ("Lammle Decl.") (ECF #9), ¶¶ 8-9.[1]

On November 18, 2013, Lammle claims to have established the Lammle Irrevocable Trust (the "Trust") "to hold [his] assets both now and upon [his] death." Lammle Decl., ¶ 5. He claims to have appointed as trustee his half-brother, Mark Regan, a California resident. *Id*., ¶ 6. The same day it was created, the Trust purchased 50 "units" of Wayzata (or a 0.5% ownership interest) from Lammle for $19,000. *Id*., ¶ 8. Lammle intimates that his sudden creation and funding of the Trust were precipitated by his father's failing health and lack of estate planning. *Id*., ¶¶ 2-4. He provides no other details about the Trust (*e.g.*, the identity(ies) of the beneficiary(ies), what other property

---

[1] Wayzata submitted Lammle's declaration in support of its Motion for Remand. Nissan does not concede the truth of Lammle's averments, which are as yet untested and uncorroborated.

(if any) the Trust holds, or why he settled the Trust with this particular type and amount of property), and no written proof of the limited information he does furnish, including the documents establishing the trust, appointing Mr. Regan as trustee, and assigning 0.5% of his Wayzata interest to the Trust.

Nine days later, on November 27, 2013, Wayzata executed the complaint, serving it on December 2, 2013. Notice of Removal (the "Notice") (ECF #1), ¶ 1. Nissan timely removed the case to this Court on December 31, 2013 based upon diversity of citizenship. *Id.*, ¶¶ 3, 5. In the Notice, Nissan argued that Lammle's assignment to the Trust was a sham that must be disregarded in determining whether diversity jurisdiction exists. *See id.*, ¶¶ 9-11. Wayzata moved to remand on January 8, 2014. That motion is presently scheduled to be heard on March 7, 2014.

## DISCOVERY SOUGHT

Nissan seeks production of the following documents by Wayzata, Lammle, Saliterman, and Regan within fifteen days of this Court's Order allowing this Motion:[2]

1. All documents concerning any and all estate planning by Randy W. Lammle, including without limitation, all wills, trusts, codicils, and amendments, irrespective of their date of creation.

2. All documents and communications (including without limitation, email) concerning the creation of the Trust.

---

[2] The definitions and instructions for these requests can be found in Nissan's [Proposed] Request for Production of Documents, filed herewith as <u>Exhibit 1</u> to the Affidavit of Caleb J. Schillinger ("Schillinger Aff.").

3. All documents and communications (including without limitation, email) concerning any transfers of assets or interests (including without limitation, "units" of Wayzata) of any kind to or from the Trust.

4. All communications (including without limitation, email) concerning the filing or commencement of this litigation against Nissan.

5. All documents concerning Wayzata's membership or corporate governance, including without limitation, all articles of organization, membership or purchase agreements, by-laws, minutes, resolutions, declarations, or certificates, and any exhibits, attachments, addendums, schedules, or amendments thereto, irrespective of their date of creation.

Nissan also seeks the depositions of Lammle and Regan, limited to the jurisdictional facts, to be completed within twenty days of Wayzata's complete document production. The depositions would be held at Bingham McCutchen's office in San Francisco (for Regan) and Rock Law's office in Minneapolis (for Lammle). *See* Schillinger Aff., Exs. 2, 3.

**ARGUMENT**

Where, as here, "issues arise as to jurisdiction," the Court may grant discovery "to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978). Whether to grant jurisdictional discovery is committed to the Court's discretion. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003) (district court abused its discretion in denying request for jurisdictional discovery). In support of its argument that the assignment to the Trust was collusively made, Nissan

should be permitted to take limited discovery about the terms of, circumstances surrounding, and motive for the assignment. Without those facts—which are within the exclusive possession, custody, and control of Wayzata and its members—Nissan cannot fairly oppose Wayzata's motion for remand.[3] *See Spillers v. Chevron USA Inc.*, 2013 WL 869387 (W.D. La. Mar. 6, 2013) ("defendants should be given the opportunity to conduct very limited discovery regarding Mr. Spillers' affidavit, namely the circumstances surrounding the creation of PDS Lands, PDS Lands' acquisition of a five percent interest in eight of the twenty-three tracts at issue in this suit, Mr. Spillers' motive in assigning a five percent interest to his children, and the timing of the assignment and donation"); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., Inc.*, 794 F. Supp. 2d 265 (D. Mass. 2011) (granting defendants' motion to take limited jurisdictional discovery with respect to potentially collusive assignments).

It is now well settled that federal courts can, and should, examine and disregard assignments made principally to defeat removal. *See, e.g.*, *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 597-99 (9th Cir. 1996) (collecting cases and instructing that "the nature of the assignment must be considered when it is argued that jurisdiction has been destroyed"); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990) ("federal district courts have both the authority and the responsibility, under 28 U.S.C. §§ 1332 and 1441, to examine the motives underlying a partial assignment which

---

[3] Nor will the Court know whether it is "by acquiescence a party to the fraudulent avoidance of its jurisdiction and the substantial frustration of defendant's constitutional and statutory rights." *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166-67 (D. Me. 1969).

destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal"); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990) (the court should "interfere" if "the plaintiff ha[s] impermissibly manufactured diversity or used an unacceptable device to defeat diversity"); *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999) (disregarding collusive assignment of 25% interest to nondiverse entity); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 940 (M.D. La. 1981) ("while formation of [the nondiverse plaintiff entity assigned a 1/108th (or 0.9%) ownership interest] could conceivably serve some estate planning function, the sole motive for incorporating it in Delaware and in transferring the undivided interest in the property was to prevent the action which the plaintiffs contemplated filing against [Defendant] from being removed from state to federal court"); *Gentle*, 302 F. Supp. at 163-67 (1/100 assignment made for purpose of destroying diversity jurisdiction held not to defeat jurisdiction).[4] In *JMTR*, the court synthesized the caselaw into a non-exhaustive list of factors for consideration:

---

[4] As a leading commentator notes, "for many years, most of the federal courts that faced a challenge to the state court plaintiff's tactics on a motion to remand the action following its removal were unwilling to consider the motive behind a transaction—most commonly an assignment of the claims to a nondiverse party—that was valid under state law. . . . However, the result of this approach was to ignore the use of techniques that undermined a party's legitimate statutory right to choose a federal forum by way of removal. Gradually a change of judicial attitude on the subject has taken place. As a result, the federal courts today are more likely to exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising their authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction." 13F Charles A. Wright, et al., *Fed. Prac. & Proc. Juris.* § 3641 (3d ed. 2009). *See also Grassi*, 894 F.2d at 182-85 (describing this sea change in the law and noting that "[b]efore [*Kramer v. Caribbean Mills*, 394 U.S. 823 (1963)], district courts

> Whether the assignment here was improperly or collusively made 'is to be resolved as a simple question of fact.' There is a 'pattern' of facts that courts have found indicative of a plaintiff's impermissible attempt to destroy diversity through assignment. The pattern includes, among other factors: (1) a partial, rather than total, assignment; (2) lack of consideration paid by the assignee to the assignor; (3) the plaintiff's motive was to stay in state court; (4) the assignee had no interest in the litigation before the assignment; and (5) the assignment was made shortly before the suit was filed.

42 F. Supp. 2d at 92 (internal citations omitted).

Lammle's averments (assuming they are true) establish at least three of those factors in this case: the assignment to the Trust was a partial assignment of Lammle's membership interest in Wayzata; the assignment was made just two weeks before Wayzata commenced this suit; and the assignee (the Trust) did not exist, and thus had no interest in the litigation, prior to the assignment.[5] Whether the remaining factors are satisfied cannot be determined without developing the factual record through discovery. For example, Lammle claims that the Trust paid $19,000 in consideration for the assignment, but he fails to disclose the identity(ies) of the Trust's beneficiary(ies).

---

almost uniformly refused to inquire into the motives behind assignments destroying diversity. The opposite is true after *Kramer*.").

[5] Wayzata attempts to distinguish this case from *Attorneys Trust*, *Grassi*, and other precedents on the fact that this case involves the assignment of an ownership interest, whereas those cases dealt with assignments of plaintiffs' legal claims. *See* Memorandum in Support of Motion for Remand ("Remand Memo.") (ECF #8), at 6. But in the very next breath, Wayzata concedes that it "has at no time made or received an assignment of any of its claims [in this suit]." *Id*. Thus Lammle's assignment to the Trust of a 0.5% membership interest in Wayzata was necessarily also an assignment of a 0.5% interest in Wayzata's claims in this suit. *See Spillers*, 2013 WL 869387 at *3 ("While the assignment of a five percent interest in the underlying property, as compared to the assignment of a claim, may distinguish *Grassi* from the instant matter, the Court finds that it is a distinction without difference.").

Similarly, Lammle intimates (but does not explicitly state) that the assignment was made for purposes of estate planning. Given the timing and nature of the assignment, however, his "explanation" is dubious.

Wayzata's counterargument—that the motive for the assignment is irrelevant—misconstrues good authority and relies upon bad authority. *See* Remand Memo., at 7, citing *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132 (8th Cir. 2011) and *Curb & Gutter Dist. No. 37 of City of Fayetteville, Ark. v. Parrish*, 110 F.2d 902 (8th Cir. 1940). *Slater* does not stand for the proposition that the plaintiff's motive for the assignment is irrelevant. The question before the court was whether the "nominal," nondiverse plaintiff was truly a nominal party; the court was not asked to consider, and thus did not consider, whether there had been a collusive or improper assignment designed to defeat jurisdiction. *See Slater* at 1134-36. That is why the plaintiff's gratuitous observation that "there [wa]s no evidence of an improper motive to destroy diversity jurisdiction" in that case was entirely beside the point and "[wa]s not the dispositive issue." *Parrish*, on the other hand, although presenting facts more apposite (but still not on point), was later overruled by *Kramer v. Caribbean Mills*, 394 U.S. 823 (1963) and its progeny. *See* note 3, *supra*. *See also Carter v. Seaboard Coast Line R.R. Co.*, 318 F. Supp. 368, 372 (D.S.C. 1970) ("[W]hatever may have been deemed the rule prior to Kramer, the proposition is now settled that in connection with motions [based on jurisdiction] 'neither state law nor rule 17(a) demands adherence to the principle that the underlying motive or purpose of a[n] assignment will not be examined.'").

Neither opinion (nor any other) supports Wayzata's conclusion. The modern consensus of authority leaves no doubt: motive matters. To ascertain Lammle's motive in this case, as well as the other facts relevant to determining whether the assignment was collusively made, Nissan should be permitted to take limited discovery about the terms of and circumstances surrounding the assignment. Nissan will proceed with that discovery expeditiously pursuant to the schedule outlined in its Motion for Leave to Take Jurisdictional Discovery and to Extend Briefing on Plaintiff's Motion for Remand, submitted herewith.

## CONCLUSION

For all of the foregoing reasons, this Court should grant Defendant's Motion for Leave to Take Jurisdictional Discovery and to Extend Briefing on Plaintiff's Motion for Remand.

ROCK LAW LLC

Dated: January 21, 2014

s/ John Rock
John Rock #0323299
jrock@rocklawllc.com
Laura R. Gurney #0336683
lgurney@rocklawllc.com
120 South Sixth Street, Suite 2050
Minneapolis, MN 55402
Telephone: (612) 573-3682
Facsimile: (612) 330-0959

BINGHAM McCUTCHEN LLP

William N. Berkowitz (*admitted pro hac vice*)
bill.berkowitz@bingham.com
Caleb J. Schillinger (*admitted pro hac vice*)
caleb.schillinger@bingham.com
One Federal Street
Boston, Massachusetts 02110
Telephone: 617-951-8000

Attorneys for Nissan North America, Inc.